However, we point out here that, in each of the above-cited appeals, the fact that the expenditures were of a capital nature and the amounts actually expended were clearly established, which is not the case in this appeal. The Board is satisfied that prior to the taxable years the taxpayer had built up a good will of considerable value in its business; however, we are not convinced from the evidence before us that the total of the amounts restored to capital in 1904, 1906, and 1911, is at all fairly representative of the expenditures actually made in the acquisition of this good will. Proof of the expenditures actually made in the building up of good will is entirely lacking. Although the taxpayer submitted proof of the salaries and commissions paid to executive officers and salesmen, there is no competent evidence before us upon which a fair apportionment thereof to capital and expenses can be predicated.

---

## Appeal of BANK OF BRADY.

Docket No. 1899.    Submitted July 3, 1925.    Decided January 19, 1926.

*Arthur J. Seaton, Esq.*, for the Commissioner.

Before James, Littleton, Smith, and Trussell.

This is an appeal from the determination of a deficiency in income and profits taxes for the year 1920 in the amount of $159.09, and of overassessments for the years 1919 and 1921 in the amounts of $18.21 and $45.99, respectively. The deficiency and the overassessments are the result of adjustments of invested capital and depreciation deductions made by the Commissioner in his audit of the taxpayer's returns for the said years. The appeal was submitted upon the pleadings and depositions furnished on behalf of the taxpayer.

### FINDINGS OF FACT.

The taxpayer is a Nebraska corporation with its principal place of business at Brady. It was organized in 1904 and immediately began carrying on the business of banking, occupying a small building on lots 1 and 2 of block 11 in the said city.

In 1910 it purchased the above-described property, paying therefor the sum of $3,250. In 1914 it sold the building for $310. The building was thereupon removed, and upon the same land the taxpayer constructed a banking building, at a cost of $3,340.85, which had a reasonable useful life of 50 years. This building was completed in the year 1914 and the taxpayer has since occupied it as its place of business.

During the time from the organization of the taxpayer to the end of the year 1921 the taxpayer purchased from time to time banking-house fixtures, furniture and equipment and used the same in its business, the dates of the acquisition thereof and the cost being as follows:

| | | | |
|---|---|---|---|
| 1904 | $502.10 | 1915 | $48.05 |
| 1907 | 275.75 | 1916 | 22.56 |
| 1908 | 253.85 | 1919 | 575.20 |
| 1909 | 304.50 | 1920 | 2,073.68 |
| 1914 | 771.25 | 1921 | 152.48 |

A reasonable allowance for exhaustion, wear and tear of the fixtures, furniture and office equipment is an amount computed for each year on the basis of 6 per cent of the cost of the equipment in use during each year respectively.

### DECISION.

The deficiency for 1920, and the overassessments for 1919 and 1921, should all be computed in accordance with the foregoing findings of fact. Final determination will be settled on 15 days' notice, in accordance with Rule 50.

---

### APPEAL OF GEORGE W. BAUMHOFF.

Docket No. 1624.   Submitted November 9, 1925.   Decided January 19, 1926.

*Bernard Greensfelder, Esq.*, for the taxpayer.
*A. H. Fast* and *Robert A. Littleton, Esqs.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This appeal is from the determination of a deficiency of $1,722.30 in income tax for the year 1920, arising out of the sale of property and out of an exchange by the taxpayer of property for property. The issues are the cost of the property sold, the value of the property acquired, and the cost or March 1, 1913, value of the property disposed of by the exchange. Upon these issues there is much conflicting evidence, including the various opinions of witnesses as to the value and also the varying testimony of witnesses as to the facts.

### FINDINGS OF FACT.

On June 1, 1909, the taxpayer acquired a half interest in a farm in Jefferson County, Mo., from George Breidenbach in exchange for $5,000 cash, 34 shares of stock of the Keyes Farm & Dairy Co., and his promise to have Breidenbach elected president of the Keyes Company. The value of the 34 shares of stock at the time of this